IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MAX LOPEZ, JR.,

       Plaintiff,           CV F 95 5947 LJO WMW P

vs.                       FINDINGS AND RECOMMENDATIONS
RE MOTION FOR SUMMARY
JUDGMENT (DOC 161)

G. A. SMITH, et al.,

       Defendants.

      Plaintiff is a state prisoner proceeding pro se in a civil rights action. Pending before the Court is Defendant' motion for summary judgment. Plaintiff has opposed the motion.

      The original complaint in this action was filed on October 30, 1995. The complaint named six defendants: former CSP Corcoran Warden G. A. Smith; Chief Medical Officer Loo; Chief Dental Officer Acevedo; Dr. Tierney, D.D.; Correctional Counselor Patterson; Appeals Coordinator McCLure. Plaintiff alleges that while at Corcoran, he was housed in a cell with an inmate who presented a danger to him. Plaintiff alleges that this inmate had psychiatric problems and had a "north-south" conflict with Plaintiff. Plaintiff requested a cell move during a 1994 classification hearing, and at a later time he asked a floor officer to move him.

      Plaintiff alleges that he was assaulted by his cellmate, suffering injuries that

required treatment at an outside hospital where surgery was performed.  Plaintiff's injuries included a broken jaw.  Upon his return to Corcoran, Defendants allegedly refused to follow the surgeon's recommendation regarding his diet.  Plaintiff alleges that he was denied a blanket and pillow, that his dressings were not changed, and that his stitches were left in too long.  Plaintiff also alleges that he was not given pain medication or taken to the hospital for follow-up visits.

The complaint further alleges that Plaintiff was denied access to the exercise yard, that he was not released from the Security Housing Unit (SHU) when scheduled, that his property was taken away, and that when he was taken to another institution he vomited and was forced to swallow his own vomit.

Plaintiff alleges that he filed administrative appeals regarding various issues - SHU housing, food, medical treatment, transfer, property, and yard access.  Defendant Patterson allegedly told Plaintiff that he would not transfer him to a medical facility or infirmary.  He advised Plaintiff to talk to the floor officer about his yard access, personal property and pillow.

Defendants moved to dismiss and for summary judgment.  On May 27, 1997, findings and recommendations were entered, recommending dismissal of Plaintiff's administrative appeal claim and failure to protect claim.  The Court recommended that summary judgment be granted on the remaining claims.  The District Court adopted the findings and recommendations in their entirety.  Plaintiff filed a Notice of Appeal.[1]

On November 9, 1998, a panel of the Ninth Circuit Court of Appeals affirmed the

---

[1] The original complaint in this action was filed on October 30, 1995.  On April 2, 1996, Plaintiff filed a document titled "Amended Complaint."  Though the court found the amended complaint "woefully incomplete," the court treated the pleading as an amended complaint and denied further leave to amend.  In analyzing the sufficiency of the second amended complaint on which this action proceeds, the court will refer, for purposes of comparison, to the original complaint.  The court will not, however, consider any of the factual allegations of the original complaint of first amended complaint in order to make the second amended complaint complete.

judgment of the District Court. <u>Lopez. v. Smith</u>, 160 F.3d 567 (9th Cir. 1998). Plaintiff was granted a petition for rehearing, and an en banc panel reversed the panel's decision regarding the motion to dismiss. <u>Lopez v. Smith</u>, 203 F.3d 1122 (9th Cir. 2000). The court reversed the dismissal and remanded to the District Court with instructions that Lopez be granted an opportunity to amend. The court reversed the District Court's grant of summary judgment as to Plaintiff's outdoor exercise claim and Plaintiff's medical care claim. <u>Id</u>. at 1132 (medical care claim), 1133 (exercise claim). Accordingly, the following claims survived: failure to protect claim; 602 appeals process claim; medical care claim; deprivation of exercise claim.[2]

Defendants moved to dismiss the October 10, 2000 second amended complaint. On June 21, 2001, findings and recommendations were entered, recommending that Defendants' motion to dismiss be granted with leave to file a third amended complaint. After numerous extensions of time, Plaintiff filed objections. On March 29, 2002, the District Court adopted the findings and recommendations of the Magistrate Judge. The District Court ruled as follows.

    1. The Findings and Recommendations filed June 21, 2001, are adopted in full.

    2. Plaintiff's claims for deprivation of property and false imprisonment in the SHU are dismissed without leave to amend in accordance with the doctrine of the law of the case.

    3. As to Correctional Officer Yates and the unnamed floor officers, Plaintiff's failure to protect/cell placement claim is dismissed with leave to amend. Plaintiff's failure to protect/cell placement claim is not dismissed as to the named members of the classification committee. For the sake of clarity, Plaintiff shall allege his failure to protect/cell placement claim as a separate legal claim in his amended complaint.

---

[2] Plaintiff has abandoned the 602 appeals process claim. Plaintiff does not set forth any claim regarding the 602 appeals process in his statement of legal claims.

1    **4. Plaintiff's cruel and unusual punishment claim relating to his bus transfer is**
2    **dismissed with leave to amend.**
3    **5. Except for his claim that he was provided with an inadequate diet which is not**
4    **dismissed, Plaintiff's claims for inadequate medical care are dismissed without leave to**
5    **amend in accordance with the doctrine of the law of the case.**
6    **6. Plaintiff's Eighth Amendment claim based on denial of exercise is dismissed with**
7    **leave to amend.**
8    **7. Plaintiff's claims as to Defendant Smith are dismissed with leave to amend.**
9    **8. Any amended complaint shall be filed within thirty days following the date of**
10   **service of this decision.**
11   **On July 22, 2002, Plaintiff filed an amended complaint, on which this action**
12   **proceeds. On May 1, 2003, Defendants filed an answer. On January 3, 2007, Defendants**
13   **filed the motion for summary judgment that is before the court. On March 14, 2007,**
14   **Plaintiff filed his opposition to the motion.**
15   **The July 22, 2002, amended** complaint sets forth the following claims.[3] While Plaintiff
16   was confined in the Security Housing Unit (SHU) at California State Prison - Corcoran
17   (Corcoran), he was assaulted by his cell partner, inmate Mook, and suffered a broken jaw. The
18   assault was
19   precipitated by either a conflict between Northern and Southern Hispanic inmates, or because
20   inmate Mook was mentally ill. Plaintiff was seen by a classification committee before the
21   assault, and he informed the members that he was having difficulties with inmate Mook, but they
22   took no action to move him to another cell. Plaintiff complained to officers in the SHU about
23   inmate Mook, but he was not moved to another cell. After the assault, Plaintiff was taken to an

---

[3]Plaintiff does not dispute Defendants' characterization of his claims. The court will therefore adopt Defendants' statement of claims.

4

outside hospital for treatment, his jaw was wired shut, and he was prescribed a liquid diet. Upon his return to Corcoran, he was not given a blanket or a pillow, he was prescribed a pureed diet, which was difficult to eat, he was denied outdoor exercise, he was retained in SHU beyond his pre-determined release date and staff failed to change his bandages. Defendant McClure failed to respond to Plaintiff's administrative appeals. Plaintiff was scheduled to be transferred to another prison, but the transporting officer refused to allow him on the bus, because his jaw was wired shut. Plaintiff was denied access to his personal property from that date, until he was actually transferred to another prison. Before being transferred, Plaintiff attempted to dissuade the Transportation Sergeant from making him get on the bus, for fear that he would become motion sick, but he was ordered onto the bus. During transportation, Plaintiff became nauseous, and swallowed his own vomit, to keep from choking.

## SUMMARY JUDGMENT STANDARDS UNDER FED. R. CIV. P. 56

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Poller v. Columbia Broadcast System, 368 U.S. 464, 467 (1962); Jung v. FMC Corp., 755 F.2d 708, 710 (9th Cir. 1985); Loehr v. Ventura County Community College Dist., 743 F.2d 1310, 1313 (9th Cir. 1984).

> Under summary judgment practice, the moving party
> 
> [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions

on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968); Ruffin v. County of Los Angeles, 607 F.2d 1276, 1280 (9th Cir. 1979), cert. denied, 455 U.S. 951 (1980).

In attempting to establish the existence of this factual dispute, the opposing party may not rely upon its allegations, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Rule 56(e); Matsushita, 475 U.S. at 586 n.11; First Nat'l Bank, 391 U.S. at 289; Strong v. France, 474 F.2d 747, 749 (9th Cir. 1973). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Anderson, 477 U.S. 248-49; Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party

need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  First Nat'l Bank, 391 U.S. at 290; T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments); International Union of Bricklayers v. Martin Jaska, Inc., 752 F.2d 1401, 1405 (9th Cir. 1985).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.  Rule 56(c); Poller, 368 U.S. at 468; SEC v. Seaboard Corp., 677 F.2d 1301, 1305-06 (9th Cir. 1982).  The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)(per curiam); Abramson v. University of Hawaii, 594 F.2d 202, 208 (9th Cir. 1979).  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts....  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).  Where "conflicting inferences may be drawn from the facts, the case must go to the jury." LaLonde v. County of Riverside, 204 F.3d 947, 959(9th Cir. 2000).

**Deliberate Indifference to Medical Needs (Inadequate Diet)**

1  **Plaintiff alleges that when he was returned to Corcoran after seeing an outside**
2  **physician, he was provided with a pureed diet, supplemented with "Ensure," an liquid**
3  **nutritional supplement. Plaintiff alleges that it was difficult to eat the pureed food. He**
4  **alleges that he complained about the pureed diet to Defendants Tierney and Patterson, but**
5  **nothing was done.**
6  **Defendants note that Plaintiff has previously argued that as a result of the pureed**
7  **diet, he lost twenty-two pounds. The Ninth Circuit determined that Plaintiff's claim that**
8  **he lost twenty-two pounds, coupled with his claim that he was told by a doctor that his**
9  **recovery has been hindered, was sufficient to demonstrate a reasonable dispute of material**
10 **fact.**
11 **In support of their motion for summary judgment, Defendants refer the court to**
12 **exhibits in support of the earlier motion for summary judgment filed on May 20, 1996.**

### DEFENDANTS' STATEMENT OF UNDISPUTED FACTS

14  1.  **Plaintiff, Max Lopez, Jr. (Lopez), was transferred to California State**
15 **Prison - Corcoran on September 9, 1994. (Exhibit A, Movement History, previously filed**
16 **with the court on May 20, 1996.)**
17  2. **Lopez was transferred to California State Prison - Sacramento on December 16,**
18 **1994. (*Id.*)**
19  3. **On October 28, 1994, Lopez suffered a broken jaw, when he was assaulted by his**
20 **cell partner, inmate Mook, E-74497. (Exhibit B at 00002-06 (medical records of Max**
21 **Lopez, Jr., previously filed with the Court on May 20, 1996).**
22  4. **Lopez was taken to the prison emergency room, and then to San Joaquin**
23 **Community Hospital. (*Id.*)**
24  5. **Upon admission to San Joaquin Community Hospital, Lopez' weight was**
25 **recorded at 172 pounds. (*Id.* at 00011.)**

1      **6.   Upon discharge it was recommended that Lopez be provided a diet that could be**
2  **consumed through a straw, either homemade or by Ensure, of 2500 to 3000 calories per**
3  **day. (*Id.* at 00022.)**
4      **7.   After his return to Corcoran, Lopez was placed in the care of Defendant**
5  **Tierney, a  dentist. (*Id.* at 00039.)**
6      **8.   Defendant Tierney prescribed a blended food diet, with additional milk. (*Id.* at**
7  **00038.)**
8      **9.   Defendant Tierney also prescribed Ensure, to be given twice daily. (*Id.* at 00043.)**
9      **10.   Lopez' weights were charted from November 9, 1994, to December 15, 1994.**
10 **His weight on November 9, 1994, was 165 pounds. His weight on December 15, 1994, one**
11 **day before his transfer to CSP-Sac, was 163 pounds. His weight varied between 166 and**
12 **163 pounds. (*Id.* at 00047.)**
13     **11.   After Lopez was transferred to CSP-Sac, his recorded weight on January 16,**
14 **1995, was 166 pounds. (*Id*. at 00048.)**
15     **12.   Regulations of the Department of Corrections and Rehabilitation provide that**
16 **medical outside doctors may not prescribe treatment to prisoners while they are confined**
17 **in a state prison. (Exhibit C, Cal. Code Regs. tit. 15 § 3354(b) 1992.)**
18     **13.   Defendant Acevedo was the Chief Dental Officer at Corcoran. He did not**
19 **provide any treatment to Lopez. (Exhibit D, Interrogatory Responses of Defendant**
20 **Acevedo.)**
21     **14.   Defendant Loo was the Chief Medical Officer at Corcoran. (Exhibit E,**
22 **Interrogatory Responses of Defendant Loo.)**
23     **15.   A prescription by an outside doctor would, at most, be considered a**
24 **recommendation. (*Id.*)**
25     **16.   Defendant Loo's involvement in Plaintiff's treatment was limited to issuing a**
26

1 **memo to the Utilization Review Nurse, to assure that Plaintiff was receiving at 2500 calorie**
2 **diet each day, because Plaintiff had complained of weight loss. (Exhibit B at 00036.)**
3 **    17.   Lopez has never claimed that he was told that his recovery was hindered by**
4 **losing weight, only that his recovery could be hindered if he did not receive adequate**
5 **nutrition. (*See* Affidavit of Max Lopez, Jr. in Support of Motion for Answer to Motion to**
6 **Dismiss/Motion to**
7 **Cross-Move for Summary Judgment "Post-Operative Care" at 2:12-15, Defendants'**
8 **Exhibit F.)**
9 **    18.   Lopez is 5'7" tall. (Exhibit B at 00011.)**
10 **    19.   A Body Mass Index (BMI) of 18.5 to 24.9 is considered normal. A BMI of 25**
11 **and above is considered overweight. (Exhibit F, Department of Health and Human**
12 **Services, National Institute of Health, Calculate Your Body Mass Index.)**
13 **    20.   At 172 pounds, Plaintiff would have been considered overweight, with a body**
14 **mass index (BMI) of 26.9. (*Id.*)**
15 **    21.   If, as Plaintiff claims, he lost twenty-two pounds before he was transferred to**
16 **CSP-Sac, he would have been within the healthy weight range for his height, with a BMI of**
17 **23.5. (*Id.*)**
18 **    22.   Plaintiff has never claimed that he was told that his recovery was hindered,**
19 **only that his recovery could be hindered if he did not receive adequate nutrition. (Affidavit**
20 **of Max Lopez, Jr. in Support of Motion for Answer to Motion to Dismiss/Motion to Cross-**
21 **Move for Summary Judgment "Post-Operative Care" at 2:12-15.)**
22 **    23.   Defendant Patterson was a Correctional Counselor assigned to the Security**
23 **Housing Unit at Corcoran. (Amend. Compt. at 2:18-21.)**
24 **    24.   Correctional Counselors cannot prescribe medical treatment. (Exhibit C, Cal.**
25 **Code Regs. tit. 15 § 3354(a) 1992.)**

...
...
...
...
...

**25.  Defendant McClure was assigned to the position of Appeals Coordinator at Corcoran on January 1, 1995. (Exhibit G, Interrogatory Responses of Defendant McClure.)**

### DELIBERATE INDIFFERENCE

**In the March 29, 2002, order adopting the findings and recommendations of the Magistrate Judge, the District Court ruled that: "Except for his claim that he was provided with an inadequate diet which is not dismissed, Plaintiff's claims for inadequate medical care are dismissed without leave to amend in accordance with the doctrine of the law of the case."  Plaintiff's claim that he was provided with an inadequate diet therefore survives.**

A prisoner's claim of inadequate medical care does not constitute cruel and unusual punishment unless the mistreatment rises to the level of "deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976).  The "deliberate indifference" standard involves an objective and a subjective prong.  First, the alleged deprivation must be, in objective terms, "sufficiently serious." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)).  Second, the prison official must act with a "sufficiently culpable state of mind," which entails more than mere negligence, but less than conduct undertaken for the very purpose of causing harm.  Farmer v. Brennan, 511 U.S. at 837.  A prison official does not act in a deliberately indifferent manner unless the official "knows of and disregards an excessive risk to inmate health or safety." Id.

In applying this standard, the Ninth Circuit has held that before it can be said that a prisoner's civil rights have been abridged, "the indifference to his medical needs must be substantial.  Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980), citing Estelle, 429 U.S. at 105-06.  "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment.  Medical malpractice does not become a constitutional violation merely because the

11

victim is a prisoner." Estelle v. Gamble, 429 U.S. at 106; see also Anderson v. County of Kern, 45 F.3d 1310, 1316 (9th Cir. 1995); McGuckin v. Smith, 974 F.2d 1050, 1050 (9th Cir. 1992), overruled on other grounds, WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997)(en banc). Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. See Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990). A prisoner's mere disagreement with diagnosis or treatment does not support a claim of deliberate indifference. Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).

Deliberate indifference can be manifested by prison guards intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Estelle v. Gamble, 429 U.S. at 104-05. However, where a prisoner alleges a delay in receiving medical treatment, the prisoner must allege that the delay led to further injury. McGuckin v. Smith, 974 F.2d 1050, 1060 (9th Cir. 1992), overruled on other grounds, WMX Techs, Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997); Shapely v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985).

Although neither a physician's negligence nor a prisoner's disagreement with a particular course of treatment states a claim for deliberate indifference, a prison medical staff's acts or omissions will constitute deliberate indifference if staff members knew of and disregarded an excessive risk to an inmate's health. Farmer v. Brennan, 511 U.S. at 837. Prison officials are deliberately indifferent to a prisoner's serious medical needs when they "interfere with treatment once prescribed." Estelle v. Gamble, 429 U.S. at 104-05. The Ninth Circuit has found deliberate indifference where prison officials "deliberately ignore the express orders of a prisoner's prior physician for reasons unrelated to the medical needs of the prisoner." Hamilton v. Endell, 981 F.2d 1062, 1066 (9th Cir. 1992)(reversing summary judgment where prison officials forced prisoner to endure a plane flight that resulted in ear injury, in direct contravention of a treating physician's previous orders); Ortiz v. City of Imperial, 884 F.2d 1312, 1314 (9th Cir. 1989)(per

curiam)(reversing summary judgment where medical staff knew that pretrial detainee had head injury, but prescribed contraindicated medications, disregarding evidence of complications to which they had been specifically alerted by private treating physician); Tolbert v. Eyman, 434 F.2d 625 (9th Cir. 1970)(finding cognizable claim for deliberate indifference where warden refused to authorize prisoner's receipt of medicine that had been previously prescribed by a physician).

The basis of Plaintiff's claim is his allegation that when he was returned to Corcoran, he was provided with a pureed diet as prescribed by Dr. Agha, supplemented with one or two cans of "Ensure," a liquid nutritional supplement. Plaintiff alleges that it was difficult to eat the pureed food, sometimes taking him as much as three hours to consume a meal. Plaintiff alleges that he complained about the pureed diet to Defendants Tierney and Patterson, but nothing was done.

Defendants note that the amended complaint does not allege that Plaintiff lost weight because of his diet, nor does it allege that his healing was affected by a lack of nutrition. Though he did not allege such a claim in his complaint, the Ninth Circuit determined that Plaintiff claimed in his affidavit in opposition to the first motion for summary judgment that he lost twenty-two pounds, coupled with his claim that he was told by a doctor that his recovery had been hindered, was sufficient to demonstrate a reasonable dispute of material fact.

In order to meet their burden on summary judgment, Defendants must demonstrate that there is a lack of a triable issue of material fact - evidence that Defendants caused Plaintiff to lose weight such that it constituted cruel and unusual punishment as that term is defined above.

Defendants argue that Plaintiff never claimed that he was told that his recovery was hindered, only that his recovery could be hindered if he did not receive adequate nutrition. (Affidavit of Plaintiff in support of Answer to Motion to Dismiss/Motion for Summary Judgment "Post-Operative Care" at 2:12-15).

Defendants refer the Court to Exhibit B to their May 20, 1996 motion for summary judgment. Exhibit B to the motion before the court includes copies of Plaintiff's medical record.

Page 00011of Exhibit B indicates that Plaintiff was received for treatment at San Joaquin Community Hospital on October 28, 1994, following the assault. Pages 12 and 13 of Exhibit B describe the operation by Dr. Agha. Plaintiff was diagnosed with a fractured mandible. The post-operative note indicates that "patient tolerated the whole procedure well and was taken to the recovery room in a good condition."

Plaintiff was discharged on October 31, 1994. Upon discharge it was recommended that Plaintiff be provided a liquid diet of 2500 to 3000 calories per day. Id. pp. 00022. Page 00011 indicates that Plaintiff weighed 172 pounds upon admission to the hospital.

Page 00043 of Exhibit B indicates that Dr. Tierney, D.D.S., prescribed Ensure twice daily for 30 days, with one refill on November 5, 1994.

Page 00047 of Exhibit B includes a weight log, indicating that Plaintiff's weight varied from 169 pounds on November 9, 1994, to December 16, 1994, the date of his transfer to CSP Sacramento.

Defendants argue that, as to Plaintiff's claim that he lost twenty-two pounds, there is no evidentiary support. The Court finds that, as to this claim, Defendants have met their burden on summary judgment. The evidence submitted by Defendants indicate that Plaintiff lost, at most, 9 pounds. Plaintiff's medical records indicate that he weighed 165 pounds on November 9th and November 16th, 166 pounds on November 23rd, and 163 pounds on December 1st and 15th.

Page 10 of Exhibit I indicates Plaintiff's height at 67." Defendants request the Court to take judicial notice of their Exhibit F. Exhibit F contains information from the U.S. Department of Health and Human Services, National Institutes of Health. The information defines body mass index (BMI) as a measure of body fat based on height and weight that applies to both adult

men and women.

Federal Rule of Evidence 201(b) provides that the Court may take judicial notice of a fact that either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned. The Court finds that the standard BMI used by the U.S. Department of Health and Human Services is a generally accepted measurement of body fat based upon height and weight. Plaintiff does not oppose this request.  Pursuant to Exhibit F, Plaintiff, at 5'7" tall and 172 pounds, would have been considered overweight, with a BMI of 26.9.  As noted, there is no evidence that Plaintiff lost twenty-two pounds. Defendants note, however, that had Plaintiff lost twenty-two pounds, he would then have been in the healthy weight range for his height, with a BMI of 23.5.

The Court finds that as to Plaintiff's claim of an inadequate diet, Defendants have met their burden. Defendants have come forward with evidence that Plaintiff did not deprive Plaintiff of an inadequate diet. Defendants' evidence indicates that Plaintiff did not suffer any serious medical injury as a result of an inadequate diet.   In his opposition, Plaintiff comes forward with no evidence that establishes a triable issue of fact - evidence that Defendants' conduct related to his liquid diet constituted deliberate indifference resulting in injury to Plaintiff. Plaintiff's opposition consists of legal argument, and disagreement with Defendants' contentions. Plaintiff doe not, however, come forward with evidence of a triable issue of fact. Defendants are therefore entitled to summary judgment on this claim.

<u>DENIAL OF EXERCISE</u>

Pursuant to the March 29, 2002 order of the District Court, Plaintiff's claim of denial of exercise was dismissed with leave to amend.   The allegations regarding denial of exercise follow.

> Mr. Lopez did not receive any yard time, when Mr. Lopez
> complained to the second and third watch floor officers, he was

>told, they would take care of it which they never did.
>
>Mr. Lopez asked the floor officers to see and talk to the section Sgt. D'Harlingue about getting yard, blankets, pillow and about the food Mr. Lopez was told that the Sgt. was too busy any that they would check into it, which they never did.
>
>All Mr. Lopez wanted was a little fresh air and sun.
>
>Mr. Lopez sent a CDC 602 appeals form to the section Sgt. Asking for yard, blankets, pillow and food. But never received a reply to the 602, it was sent on 14 Nov. 94.

July 22, 2002, Am. Compl. ¶¶ **75-78.**

"'[S]ome form of regular outdoor exercise is extremely important to the psychological and physical well being of the inmates.'" Allen v. Sakai, 48 F.3d 1082, 1087 (9th Cir. 1995) (quoting Spain v. Procunier, 600 F.2d 189, 199 (9th Cir. 1979)). Thus, "[the] deprivation of outdoor exercise [can] constitute cruel and unusual punishment." Allen, 48 F.3d at 1087. While the temporary denial of outdoor exercise with no medical effects is not a substantial deprivation, May v. Baldwin, 109 F.3d 557, 565 (9th Cir. 1997), in this Circuit, the deprivation of regular outdoor exercise for a period of almost ten months is unquestionably sufficient to meet the objective requirement of the Eighth Amendment analysis. Lopez v. Smith, 203 F.3d 1122, 1132-33 (9th Cir. 2000) (denial of all outdoor exercise for six weeks meets objective Eighth Amendment requirement); Allen, 48 F.3d at 1086-88 (forty-five minutes of outdoor exercise per week for six weeks meets objective Eighth Amendment requirement).

**Here, Plaintiff alleges that he was denied yard from November 30 to December 16, 1994. Plaintiff does not identify who deprived him of yard. As noted above, however,** the temporary denial of outdoor exercise with no medical effects is not a substantial deprivation, May v. Baldwin, 109 F.3d 557, 565 (9th Cir. 1997)**. Plaintiff makes no allegation, and offers no evidence, that the seventeen day temporary denial of outdoor exercise caused him any injury. This claim should therefore be dismissed without leave to amend.**

**BUS TRANSFER**

**Plaintiff's claim of cruel and unusual punishment regarding his bus transfer was dismissed with leave to amend.  Plaintiff alleges that he told the transportation sergeant that he should not be transported because he might become motion sick, and if he vomited, he could choke.  Plaintiff asserts that he was ordered to get on the bus, and that he did become motion sick.   Plaintiff advised the transportation sergeant that he had wires in his mouth, and he needed wire cutters in the event he became sick.  The transportation sergeant refused his request for wire cutters, and advised Plaintiff that if he became sick, he could use a plastic bag.**

**Defendants note that the name of the transportation sergeant is unknown, and Plaintiff concedes that he is unable to discover the name of the transportation sergeant. Am. Compl., ¶ 118.   Plaintiff can not, and has conceded that he will not be able, to name the transportation sergeant.  As Plaintiff will never be able to name a defendant, this claim should be dismissed.**

## CLAIMS AS TO DEFENDANT SMITH

**Defendants argue that Plaintiff's allegations regarding Defendant Smith are vague and conclusory.   In the operative amended complaint, Plaintiff alleges that Defendant Smith "is to be notified and made aware of any violence and injuries of both inmates and staff and of any transportation of injured inmates or staff to an outside hospital for medical care along with his approval of this kind of actions to be taken."  Am. Compl., ¶ 45.  Plaintiff alleges that Defendant "Smith knew the living conditions, medical needs and transfer of Mr. Lopez as per his job descriptions."  Id., ¶ 129.**

To warrant relief under the Civil Rights Act, a plaintiff must allege and show that defendant's acts or omissions caused the deprivation of his constitutionally protected rights. Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1993).    In order to state a claim under § 1983, a plaintiff must allege that: (1) a person was acting under color of state law at the time the

complained of act was committed; and (2) that person's conduct deprived plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States. Paratt v.Taylor, 451 U.S. 527, 535 (1981).

The statute plainly requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. See Monell v. Department of Social Services, 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which the complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Liability may be imposed on supervisory defendants (such as Smith) under § 1983 only if (1) the supervisor personally participated in the deprivation of constitutional rights or (2) the supervisor knew of the violations and failed to act to prevent them. Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). Plaintiff does not allege any facts, nor does he come forward with any evidence, that Smith participated in the alleged violations. The gravamen of Plaintiff's allegations as to Smith is that, in his position as Warden, he failed to prevent the alleged conditions of Plaintiff's confinement. Plaintiff has not, however, alleged any facts to support his conclusory allegation that Defendant Smith knew of the harm to Plaintiff and failed to prevent it. Defendants correctly argue "Under Section 1983, supervisory officials are not liable for actions of subordinates on any theory of vicarious liability." Hansen, 885 F.2d at 646. Simply put, Plaintiff may not simply hold Defendant Smith liable because, as the Warden, he is presumed to have known of the alleged misconduct. Defendant Smith must therefore be dismissed.

**Accordingly, IT IS HEREBY RECOMMENDED that:**

1. **1. Defendants' motion for summary judgment be granted on Plaintiff's claim of deliberate indifference regarding inadequate diet.**

2. **2. Plaintiff's claim of denial of outdoor exercise be dismissed for failure to state a claim.**

3. **3. Plaintiff's cruel and unusual punishment claim regarding the bus transfer is dismissed.**

4. **4. Plaintiff's claim as to Defendant Smith be dismissed, and Defendant Smith be dismissed from this action.**

5. **4. This action be remanded to the Magistrate Judge for pretrial proceedings on Plaintiff's failure to protect claims against Defendant Yates.**

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636 (b)(1)(B). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised that failure to file objections within the specified time waives all objections to the judge's findings of fact. See Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998). Failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   September 5, 2007**              /s/  **William M. Wunderlich**
                                            UNITED STATES MAGISTRATE JUDGE